Bradbury, J.,
dissenting.
This decision seems to me to rest upon the unsound principle that one person may be held to respond in damages to another on account of injuries sustained by the malicious acts of a third person.
Unfortunately the case was argued in this court upon one side only. The circuit court rendering the judgment is composed of men of experience, learning and ability, and the views of that court upon the question were in harmony with those of the court of common pleas, but we have not had the benefit of that experience, learning and ability, or of the research of counsel in support of their judgment. Their decision, I think is correct, but I feel the embarassment incident to an attempt to justify it without some intimation of the grounds upon which they placed it, or of the views of counsel for the party who prevailed in that court.
The action did not sound in contract, the plaintiff was under no obligation to receive milk, and the defendant was under no obligation to deliver it, nor was any price fixed for that which might be delivered and received. The only averment of the petition relating to a promise is this: “Said defendant promised and agreed at the time to bringing, first, his milk to plaintiff’s said factory to bring nothing but milk of first class or superior quality.” No consideration is stated for this supposed promise, and an analysis of the petition shows that the promise was one implied from the fact that milk was to be delivered, and arose out of the circumstances surrounding the parties. The uses to which the milk, according* to the averments of the petition, was to be devoted, was simply mat *420 ter of inducement, showing what damages the defendant might be held to contemplate as the result of his wanton act.
The gist of the action is that the defendant knowingly delivered foul and unwholesome milk. The averment being that the “defendant continued to thus send impure, unwholesome, foul and adulterated milk * * * knowing the same to be adulterated” * * *
The defendant denied this and the ease was tried.
The evidence was not set forth in full, the bill of exceptions showing merely that evidence was given tending to support the petition, and that evidence was also given tending to show that the milk was maliciously watered by an employe of defendant for the purpose not of damaging the plaintiff, to whom the milk was delivered, but of' injuring his employer, the defendant; that it was not his duty to water the milk, and in doing so he was not acting for defendant, but solely out of malice towards the defendant, and that defendant was entirely ignorant of his actions.
In this view of the evidence, the following instructions were asked by the defendant and were refused: “If the jury shall find that the milk of defendant was delivered at its factory watered, then the defendant would - be liable for the damages that necesssarily and directly resulted therefrom, even though the defendant did not water such milk or authorize it to be. done, or know the same was or. had been watered, if the jury shall .find it was watered by one Ed. Miller, the employee of defendant. ’ ’
And the court did charge the jury as follows:
“If it appear to you that the milk was adulterated by Miller maliciously to injure Coit, and was *421 without Coit’s knowledge, so delivered to the factory adulterated, then Mr. Coit is not liable to defendant for any damage resulting to them from such adulterated milk. Mr. Coit, however, would remain liable for the amount of water delivered, but only because it was not milk.”
The instructions given by th.e court of common pleas were directly applicable to the facts, and were sound, unless one man is to be mulct in damages for the malicious act of another. Employers are liable for that negligence of their servants which occurs in the course of the employment. And under certain peculiar circumstances where the master owes a special duty to the party injured, he is held liable for malicious acts directed against the person to whom the master owes such special duty. This principle is generally, if not exclusively confined to common carriers of passengers.
I know of no principle, however, by which a master is held liable for a malicious act. of a servant, not committed in the scope of his employment, directed against another; or where, as in this case, the malicious act was directed against, the master himself, was not done in the course of the master’s service, and incidently injured another.
Where a malicious act is done to the injury of another, the right of the latter, to redress, is against the party who caused the injury, if the party committing the act' cannot respond in damages, the party injured can obtain no practical relief., This result often occurs, but is unavoidable. The person doing the mischief is, in such cases, amendable to the public, if the act has been made a *422 crime, otherwise he is answerable only at the bar of public opinion.
In driving the vehicle in which this milk was carried to market, the servant had no duty to perform in respect to its quality. His authority was in all respects similar to that of a boy who drives a delivery wagon for a retail grocer. It is the duty of the boy to deliver the parcels as they may be wrapped up in the shop. It was the duty of this hired man of the defendant to deliver this milk in the condition it was when it left the defendant’s farm. As well charge'the grocer with civil liability for the death of a customer, because a boy maliciously stops at a drug, store, procures arsenic, opens and distributes it through a package of sugar, as to charge the defendant in this case with liability because his man stopped-at a wayside pool of stagnant water, maliciously dipped a bucket into it and discharged its contents into the cans of milk committed to his charge. In each case the fact of employment gave the opportunity for the act, but the act was not in the line of the employment of either.
The statutes in relation to adulterated food and milk are no more applicable in the one case than in the other. If they bear on the question at all, the penalties they denounce should be directed against the wrong doers, and not one of the victims of the wrongful act.
No authorties have been cited in support of these views; none are needed, if the analysis of the petition upon which they are found is correct.
A copy of the petition and answer are appended, from which the character of the action and of the issues joined between the parties can be readily perceived.